Our next case this morning is Kreuziger v. Milwaukee County and MMSD. Mr. Brady May it please the court. Good morning, Your Honors. Esteemed counsel for the appellee, Attorney Joshua Brady from the law firm of Golanus, Pollock, Jacobs & Johnson representing Brian Kreuziger, the plaintiff appellant in this matter. Repealing the lower court decision that granted the defendant's motion for summary judgment that ultimately dismissed the plaintiff's complaint seeking a taking cause of action of his riparian ownership rights to waterfront property on the Milwaukee River. Since Mr. Kreuziger was a teenager, he enjoyed the recreational usage of the impoundment created by the Estabrook Dam. His lifelong goal was to own property on the Milwaukee River that would allow him to utilize the beauty, aesthetic, the fishing ability, the hunting ability, as well as the recreational swimming ability with non-motorized use in this specific area of the Milwaukee River that's created by the Milwaukee Dam. So the Milwaukee or the Estabrook Dam came in in 1938 and it created 10 retractable gates. These 10 retractable gates allowed the owner of the dam to control the water levels of the Milwaukee River. In controlling those water levels, they had a 100-acre impoundment. This is a- So Mr. Brady, I mean, we have read your briefs and I'm concerned that time is short. So I would like you to move to the point that the district court emphasized that really the dispositive point in his view, which was the lack of a protectable property interest in that swath of the land between the new lower levels of the Milwaukee River after the dam was removed and whatever level you want to talk about, maybe the low level when the gates were open, maybe the higher level when the gates were closed. There's some defined area and the judge relying on the Willow River case says, no, you just don't have a property interest and you can't pursue a takings claim unless you have property that's been taken. Correct. In the lower court, in their analysis, classified as the high watermark to the low watermark and relied upon federal case law as the court points out, I'm sorry, as the judge points out as the Willow River case. The distinguishable facts between those two cases in our case is that they raised the water level three feet in the Willow River case. In raising that water level, they created a new high watermark. And in doing that, the analysis between the previous high watermark and the new high watermark was all under the public trust doctrine because it was all underwater. What we have here is we have a reduction of four feet of water, which is quite the opposite. So we have a lectern here that's four feet tall and we removed that level of water from Milwaukee River. But nobody took Mr. Croiser's property away from him. I mean, he's complaining that it's, you know, slimy and stuff. I don't know why he can't just fix it after four years, but putting that to one side. He still has the land. You haven't mentioned anything about, you know, a dock that he might have or anything. He still has his land. The river is a little bit further away from the land. And again, you know, property rights are rather a formal area of the law. And I want you to explain to me why the judge's decision that he really had no protectable property right in where that river ended is wrong. To your point, Your Honor, you're saying that this resulting action provided him with more Now he's got more land, and just because it's ten more feet to go to the river, that's not exactly a detriment or a taking. Well, and formally, you know, why is it, why did his deed, why did the state of Wisconsin, why did somebody give him such a robust property right in the old water level, itself artificially created by the Estabrook Dam, such that when they demolished the dam and the water level goes back to what Mother Nature wanted it to be, and it's lower, why he has a lawsuit against the state? He's not suing a fellow riparian owner. He's suing, you know, a state entity, local entities being the same thing for this purpose. And you're getting into the Eumann's case, which is relied upon in our briefs extensively. There is one point that I do have to clarify. This isn't an artificial impoundment. This isn't a creation of a hundred acre lake. This is a continuation of a right that was previously there. So there was a rock. For a while. But there was a time, as you started out, before they built the dam. No, before they built the dam, there was a rock outcropping, and it was a natural impoundment. So this dam installed in 1938 was a continuation of that right, meaning that at a minimum, my client had 70 years of this same water level. And even going back further, if we would have more historians that would come in and be able to allow that, they would have that ability to do it. But in all the cases... It begs the question, I don't think you're engaging with Judge Wood's question, which is that you don't have a property interest in water level. There's no legal support for that. No. It's in the resulting land that has been impounded. But no, the ordinary high water mark concept marks the boundary between the public trust doctrine and the private property interest. And the public owns the beds of rivers and lakes in Wisconsin and everywhere else in the state. So you have public trust up to the ordinary high water mark, and then your client's property starts beyond that. And in addition to that, other sticks in his property bundle include riparian rights, but those are just rights of access and use. They're not property interests in a certain water level. He hasn't been denied any access or use of the river. There's been no physical taking of any kind, because he actually has more property now than less, because the destruction of the dam has lowered the water level permanently below the ordinary high water mark that used to exist when the dam existed. So I mean, I just don't see your theory of a property interest here, and there's certainly no case law support for it. Well, all of the case law that's put forth as it relates to the federal takings claims all deal with increasing and aiding navigability. What we have here is we have... I'm not talking about the justification. You're talking about whether there's an adequate justification for what the DNR and Milwaukee County and MMSD conspired to do here against your client. That's a separate issue that is secondary in terms of the tiers of analysis here. You've got to establish a property interest. And it's inherently ingrained in case law that the property owner has the right up until the edge of the water. What is created here is it's created this edge of the water going at least 10 feet away from where his retaining wall previously was. So now we have a retaining wall that's substantially worthless. We have the lower court that analyzed it from high water mark to low water mark, when it's realistically it's high water mark to the new and resulting... I guess, Mr. Brady, where I'm trying to get the question to go is between the high water mark and the low water mark, the land that is now, I'm calling it the swampy bottom that's been left. Is it your contention that who owns that property? So that's really the crux of this problem. It's a nuisance, overgrown, mossy, going to be classified as wetlands. It's not going to be something that's useful to my client or able to provide any access to the river itself. So we have this stretch of land that drops down four feet. Who owns it? So it's not owned by my client because it has no use. So what property was taken from your client? So he owns the property up until the water line. And now you have this property that's what we call in the interim property. And it's going to be something that's classified as more of a dual ownership between my client and between Milwaukee County. So in that dual or that interim property level that's there is we have neither party doing the upkeep. But he never had it. I think that's the problem that we're exploring. Maybe it belongs to him. If he has it now, he just has more property. If the MMSD owns it now under this new zoning that I gather was one of the impetuses for this change, then I don't see why that's a change in situation because he didn't own it before. Before it was the land under the water, public trust land, which as Chief Judge Sykes says, that's the law in every state I know about anyway. It's a very common allocation of property rights. So how did he lose something other than maybe this area is there that now is next to his land that he'd like to have somebody else perform upkeep on? And even if it were deeded and granted to him and allowed him to do upkeep and allow him to do maintenance and actually utilize that land, that would be something that could be construed as not a taking or even a benefit in some ways. But that's not something that's been allowed. That's not something that's been authorized. That's not something that he has access to utilize that land itself. On top of removing his access to the water, the river, we have a riverway that used to have a midpoint depth of five feet that now has a midpoint depth of one foot. There's no chance that there's any navigability improvement for that. If I may, I'll reserve just my short time for rebuttal. That's fine. Thank you. Thank you. Mr. Mullen. May it please the Court, Danny Mullen on behalf of Defendant Eppelee's Milwaukee County and Milwaukee Metropolitan Sewerage District. Your Honor's questions this morning have highlighted the issue. Mr. Kruziger never owned the property interest that he claimed has been taken by MMSD or Milwaukee County. Who owns it now? He does. And I'd cite the Court. How did he acquire ownership of it if it's part of the riverbed? That means MMSD owns it now and has to maintain it. Well, no. There's a body of case law on the doctrine of accretion and reliction, which was cited in the briefing materials. And I would point to the Court to Mr. Kruziger's own deposition testimony. That's document 50-1 in the record, page 46. The question is, your property line from your perspective is to the middle of the river except that anything that is wet, meaning water, the river itself, is subject to the public trust doctrine. Is that a fair recitation? Yes. Of your understanding? Yes. Next question. I'm not talking about what the testimony may or may not show. I'm talking about what the law says. The law says that below the ordinary high water mark, the government has a superior interest under the public trust doctrine. And the exercise of that right to regulate that doesn't entitle a riparian order to compensation. And the next line of questioning is that Mr. Kruziger admits that he understands I have more dry land when the water is low and less when it's high. Mr. Kruziger recognizes that. Are you arguing kind of an accretion or avulsion sort of argument that the removal of the dam permanently exposed a certain amount of land? Because property rights, riparian rights, do shift sometimes depending on whether you've had accretion or avulsion. Certainly. And as counsel explained, there were gates to this dam that would raise and lower. And at least, dating back at least to 1986, which is 14 years before Mr. Kruziger ever purchased this property, the gates would remain open in the fall, winter, and spring months. And the water levels would recede from this impediment. And Mr. Kruziger admitted, and it's in the record, that the water level that exists now is similar to the water level that existed when the dam was in place and the gates were open. So this water level that we have present day is similar to the water level that we had with the dam in place and gates open. And as Mr. Brady had already conceded to this court this morning, is the government owns the dam. It's a public dam. Milwaukee County owned it, operated it. It raised and lowered the gates. It had the authority to control the level of the water. Mr. Kruziger's claimed property right, property interest, is the maintenance of a water level and simply the law does not recognize him as owning it. Why is MMSD involved in this case? Well, Mr. Brady sued both. Milwaukee County owned the dam. There was a transfer. I mean, what was the Sewers District's role? There was a transfer of rights here to get out from under the board of supervisors, something like that? No. So Milwaukee County owned the dam. MMSD is more situated technologically to perform the actual removal itself. So the property was transferred from Milwaukee County to MMSD to permit that process. And then the property was transferred back to Milwaukee County. So Milwaukee County, I'm counsel for both Milwaukee County and MMSD. It was an effort to be most efficient in the removal of the process. Okay, I see. So, I mean, that's what the public trust doctrine allows for. The DNR is not a party to this case. They issued the permit. There's no allegation in the complaint that the permit was improperly issued. I know that there's some comments to that in the briefing that somehow... So was Mr. Kruziger's mistake, in your opinion, not pursuing remedies through the DNR permit process? I don't know whether there's certiorari or appeals or anything to hire authorities when these permits are considered. There is a state process under Chapter 227. And whether or not that's a mistake is not for me to make, to determine. But he doesn't have the right... But he could have done that. He could have done that. He indicates that he testified in various points. Yes, he could have done that in a formal way. And that raises the issue of deference. And that's a state court proceeding, an administrative proceeding, where we now are having to litigate or re-litigate the collateral issue of whether or not the permit that the DNR issued... It wasn't Milwaukee County. It wasn't MMSD that issued the permit. We sought the permit, of course. But they were the ones who, under their statutory authority, conducted their own independent investigation, reached findings of fact, conclusions of law, and issued the permit. And they said, yes, the removal of this 20-foot concrete structure from a navigable waterway, practically speaking, it improved navigation. I know Mr. Kruziger disagrees with that, but the practical effect of it is it does improve navigation. Is it private property or public property now, between where the high-water mark was and where the riverbed lands today? Well, the law remains the same, and the public interest is up to the edge of the river. And Mr. Kruziger's property, as he acknowledged in his own testimony, is to the water's edge. Whether that's in seasonal flows, I mean, it depends. Even now, without the dam, the water level ebbs and flows, no pun intended. And with that, Mr. Kruziger owns the same bundle of rights and has the same property interest he had before the dam was removed, before the gates were opened and closed beginning in 1986, before he ever acquired the property. So I don't know if your honors have any further questions, but I think that we've identified the issue. Whether Mr. Kruziger has a property interest is the fundamental threshold question, and he doesn't. Willow River says that. Wisconsin Water Law says that. That the government, whether it's Congress under the Commerce Clause or the Wisconsin legislature as deferred to the DNR under the Public Trust Doctrine, they have the authority to regulate navigable waterways, which the Milwaukee River qualifies. And they've done that. The exercise of that right and the exercise of that regulation calls for no compensation. That's what the law is. So if there's no other questions, your honors, thank you very much. We ask that you affirm the decision of the trial court in granting summary judgment to Milwaukee County of MMSD. Thank you. Mr. Brady, you had a short while left. Anything further? Riparian ownership rights is more than just a strip of land. As it's outlined in the case law in the briefs, this encompasses more than just the land itself. It includes the entire purpose for purchasing that property. As the court asks, and it hasn't been able to be answered very well by either side, who owns the land? That's exactly the crux of this issue, and neither side knows. That's why it's a question for the jury, and that's why this case must be remanded for that exact question. Thank you. Thank you. Our thanks to all counsel. The case is taken under advisement.